# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMAN NURI OZSUSAMLAR,<br><br>    Petitioner,<br><br>    v.<br><br>PAUL COPENHAVER, Warden, et al.,<br><br>    Respondents. | Case No. 1:13-cv-00422-SAB-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE<br><br>ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.**

**BACKGROUND**

Petitioner is in the custody of the Bureau of Prisons at the United States Penitentiary located in Atwater, California, serving a sentence of 188 months pursuant to a judgment of the United States District Court, Southern District of New York, following his conviction for conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958, murder for hire in violation of 18 U.S.C. §§ 1958 and 2, and conspiracy to commit extortion in violation of 18 U.S.C. § 1951. (Resp't's Answer, Ex. 1, Vickers Decl., at ¶ 3.) Petitioner currently has a

projected release date of June 27, 2019, via good conduct time. (Id. at ¶ 3.)

On March 22, 2013, Petitioner filed a federal petition for writ of habeas corpus in this Court. The petition was dismissed on April 12, 2013, with leave to amend. On May 16, 2013, he filed a first amended petition. He does not challenge his conviction, but a disciplinary proceeding held on May 31, 2007, in which he was found guilty of threatening another with bodily harm for which he was sanctioned with a loss of 27 days of good conduct credits. Petitioner claims his due process rights were violated because (1) the Bureau of Prisons sanctioned him for conduct which occurred outside the prison; and (2) the Disciplinary Hearing Officer ("DHO") denied him a Turkish translator.

On August 29, 2013, Respondent filed an answer to the petition. Respondent contends (1) Petitioner failed to exhaust his administrative remedies; (2) the BOP had the authority to sanction him; (3) Petitioner was not denied his right to a Turkish translator; and (4) "some evidence" supported the DHO's finding of guilt. On February 7, 2014, Petitioner filed a traverse.

## II.

## DISCUSSION

### A. Jurisdiction

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal

custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole).

In this case, Petitioner challenges the execution of his sentence. Therefore, the Court has jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

**B.     Venue**

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677. Petitioner is in the custody of the Bureau of Prisons at the United States Penitentiary in Atwater, California, which is located within the jurisdiction of this Court. 28 U.S.C. §§ 2254(a); 2241(d). Therefore, venue is proper in this Court.

**C.     Exhaustion**

A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.1984). It is only after a petitioner has fully exhausted his administrative remedies that he becomes entitled to present his claims to the federal court. See United States v. Mathis, 689 F.2d 1364, 1365 (11th Cir.1982). In Ruviwat v. Smith, the Ninth Circuit explained why a petitioner must first exhaust his administrative remedies before filing for habeas relief:

> The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

701 F.2d 844, 845 (9th Cir.1983) (per curiam); see also Chua Hah Mow, 730 F.2d at 1313.

However, the exhaustion requirement was judicially created; it is not a statutory requirement. Chua Han Mow, 730 F.2d at 1313; Montgomery v. Rumsfeld, 572 F.2d 250, 252 (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional. Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987); Montgomery, 572

3

F.2d at 252. "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown, 895 F.2d at 535.

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. §§ 542.10 et seq. First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13. If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request with the Warden. 28 C.F.R. § 542.14. Upon denial by the Warden of the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons. 28 C.F.R. § 542.15. The Regional Director's decision may be appealed to the General Counsel in the Central Office of the BOP. Id. Appeal to the General Counsel is the final step in the administrative remedy process. Id. In addition, if the appeal involves the finding of a DHO, the inmate may appeal directly to the Regional Director and then to the General Counsel. 28 C.F.R. § 542.14(d)(2).

Respondent contends that Petitioner has failed to exhaust his administrative remedies. He states that Petitioner filed three different sets of administrative appeals; however, only one was accepted at the Regional Director level. (Resp't's Answer, Ex. 1, Vickers Decl., at ¶ 9, 10.) The rest were rejected for failure to explain the untimeliness of the appeal. (Id. at ¶ 13.) Petitioner was given multiple opportunities to demonstrate a valid reason for the delay, but he failed to do so. (Id. at ¶ 13.) The appeal that was accepted at the Regional Director level was denied on December 5, 2007. (Id. at ¶ 11.) Petitioner did not pursue the appeal to the Central Office and therefore did not exhaust his administrative remedies by completing the final level of review. Therefore, Respondent is correct that Petitioner has failed to exhaust his administrative remedies and the petition should be dismissed. Nevertheless, the Court will address the claims in the petition as well, since it is clear they are without merit.

///

**D.      Review of Petition**

1.      <u>Factual Background</u>

On May 9, 2007, the U.S. Marshals Service notified BOP staff at MDC Brooklyn that Petitioner had sent a threatening letter to a United States District Court Judge. (Resp't's Answer, Ex. 2, Garcia Decl., at ¶ 9.) The letter, dated May 7, 2007, was addressed to District Court Judge Peter K. Leisure and Petitioner's attorney Robert A. Soloway and contained the following statement:

> I not write any more it not doing any good.  My appeal come back.  I get honest people then.  I have friends now who are going to get information on all of you and get even for me.  May 13 is coming soon.

(<u>Id</u>.)  The letter was forwarded to the Special Investigative Services Unit ("SIS") at MDC Brooklyn and an investigation was conducted.  (<u>Id</u>. at ¶ 10.)  Based on the investigation, SIS determined there was sufficient information to charge Petitioner with a Code 203 offense for Threatening Another with Bodily Harm. (<u>Id</u>.)

On May 22, 2007, an incident report was generated charging Petitioner with a Code 203 violation. (<u>Id</u>. at ¶ 11.)  At his initial hearing, Petitioner stated he understood his rights and then made the following statement: "Yes, I wrote that letter to the Judge K. Leisure because I was upset the Judge had not give me the sentence. That why I wrote the letter."  (<u>Id</u>. at ¶ 12.)  Based on the facts, the hearing officer concluded Petitioner had committed the charged act and forwarded the matter to the Unit Disciplinary Committee ("UDC").  (<u>Id</u>.)

On May 24, 2007, a hearing was held before the UDC. (<u>Id</u>. at ¶ 13.)  Petitioner was given an opportunity to make a statement, and Petitioner stated he wrote the letter because his case was "not going right."  (<u>Id</u>.)  The UDC concluded there was a sufficient basis to refer the matter to the DHO for disposition.  (<u>Id</u>.)  Petitioner was given a Notice of Discipline Hearing before the DHO. (<u>Id</u>. at ¶ 14.)  He declined the assistance of a staff representative and indicated he did not wish to call any witnesses.  (<u>Id</u>.)

On May 31, 2007, a DHO hearing was held. (<u>Id</u>. at ¶ 16.)  Petitioner's rights were again explained to him and he acknowledged his rights by signing a form.  (<u>Id</u>. at ¶ 15.)  Petitioner declined to call any witnesses. (<u>Id</u>. at ¶ 16.)  Petitioner then made the following statement, as

summarized by the DHO:

> I have never had a problem with staff or inmates. The letter went to the judge. Yes this is my hand writing and signature. It also went to the attorney. I lost everything and was having problems. My friend went to get the transcript from the court. I never threatened anybody. Somebody else wrote it for me. My English is not that good. Somebody helped me but I do not remember who helped me.

(Resp't's Answer, Ex. 2, Garcia Decl., Attach. 1.)

The DHO considered Petitioner's statement along with the reporting officer's statement and the letter in question. (Resp't's Answer, Ex. 2, Garcia Decl., at ¶ 16, 17.) The DHO concluded that Petitioner had committed the violation as charged. Petitioner was sanctioned with a loss of 27 days of good conduct time credits. (Id. at ¶ 17.)

    2.    Claim of Lack of Jurisdiction

Petitioner alleges the BOP lacked jurisdiction to sanction him for the letter because the threatening letter was received by the judge outside of the institution. Petitioner appears to claim that the BOP disciplinary system is limited to acts that occur inside the prison. Respondent correctly argues that the claim is without merit.

To begin, the conduct for which Petitioner was sanctioned did occur inside the institution. As Petitioner admitted on several occasions, he wrote the letter and he did so on May 7, 2007, while he was in BOP custody at MDC Brooklyn. Since Petitioner committed the threatening act inside the prison, Petitioner's claim fails.

In addition, the BOP disciplinary system is designed to "ensure the safety, security, and orderly operation of correctional facilities, *and the protection of the public*, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1 (emphasis added). In sanctioning Petitioner for threatening another with bodily harm, the BOP properly pursued its goal of protecting the public.

Moreover, the BOP's interpretation and application of Code 203 was reasonable. Code 203 prohibits an inmate from "[t]hreatening another with bodily harm." 28 C.F.R. § 541.3. The DHO interpreted the statute as applying to targeted persons both within the institution and without. As Respondent notes, an "agency's interpretation of the meaning of its own regulations

1 is entitled to deference 'unless plainly erroneous or inconsistent with the regulation.'" National
2 Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 672 (2007) (quoting Auer v.
3 Robbins, 519 U.S. 452, 461 (1997)).  Given that one of the key purposes of the disciplinary
4 program is to protect the public, the DHO's interpretation was entirely reasonable.

5 Accordingly, Petitioner's claim that the BOP lacked jurisdiction to sanction him for his
6 threatening letter must fail.

7       3. Claim of Denial of Procedural Due Process

8 In his second claim for relief, Petitioner alleges he was denied his due process rights
9 because he was denied a Turkish interpreter.  Respondent contends the claim is without merit
10 since all due process requirements were met and Petitioner was not denied an interpreter.

11 Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be
12 diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell,
13 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution,
14 so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a
15 prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.
16 Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst.
17 v. Hill, 472 U.S. 445, 454-455 (1984)).

18 When a prison disciplinary proceeding may result in the loss of good time credits, due
19 process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the
20 disciplinary charges; (2) an opportunity, when consistent with institutional safety and
21 correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a
22 written statement by the factfinder of the evidence relied on and the reasons for the disciplinary
23 action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that
24 the decision be supported by "some evidence."  Hill, 472 U.S. at 455 (citing United States ex rel.
25 Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)).

26 In this case, Petitioner does not contend that he did not receive advance written notice of
27 the charges, an opportunity to call witnesses and present evidence, or a written statement of the
28 decision.  Nor can he complain since the record shows Petitioner was provided with all due

process requirements.

Nevertheless, Petitioner complains he was denied due process because he was denied a Turkish interpreter. He states he requested an interpreter at the DHO hearing, but the request was denied. He states the officials told him that "nobody speaks Turkish in this institution." He states he could not have agreed to understanding his rights since he "did not speak, comprehend, write or read English." (Petition at 9.) Respondent argues that Petitioner's claims are contradicted by the record.

The record reflects that Petitioner was advised of his rights at the DHO hearing and stated he understood them. (Resp't's Answer, Ex. 2, Garcia Decl., Attach. 1.) Petitioner waived his right to a staff representative and declined to call witnesses. (Id.) The record does not state that Petitioner requested an interpreter. In any case, Petitioner made several statements at the DHO hearing and on previous occasions. Petitioner admitted to writing the letter, and he gave several reasons for having done so. He understood enough to deny having made any threats in his letter. He was also plainly engaged at the hearing and more than able to communicate with the DHO in providing his explanation for the letter. Therefore in light of his statements, the letter, and his participation in the hearing, the Court finds his claimed inability to "speak, comprehend, write or read English" to be disingenuous.[1]

With respect to Petitioner's claim that the DHO refused to grant Petitioner an interpreter, DHO Garcia stated that it was not uncommon for inmates to require an interpreter. (Resp't's Answer, Ex. 2, Garcia Decl., at ¶ 7.) Garcia states that interpreter services are readily available

---

[1] Respondent points out that Petitioner made the same argument that he could not comprehend the English language before the sentencing court. The sentencing court stated, in pertinent part:

> [T]he Court simply does not believe Osman's testimony that his English is so poor that he was unable to understand the nature of what he was doing. Indeed, he admitted that he knew what the word "illegal" meant, and still proceeded to write a document asking someone outside the prison to engage in unlawful activity on his behalf. In his repeated communications to the Court, many of which did not involve Mr. Lair in any way, Osman has written in much the same way he did in these letters that he claims he doesn't understand. Indeed, even when he has written to the Court in Turkish, the translation of the Turkish reads the same as those letters written in English, with inaccurate or incomplete sentences, grammatical errors, and baseless and speculative allegations of a vast conspiracy against Osman by the government.

(Resp't's Answer, Ex. 3.)

if needed, and if there is no one at the institution that is able to translate the particular language, staff would contact the AT&T Language Line for assistance, as he had done previously on numerous occasions. (Id.) Garcia stated that if Petitioner had made such a request, it would have been noted in his report. (Id.)

Based on the foregoing, the evidence does not support Petitioner's allegation that he could not speak, write, read, or comprehend the English language, or that he was denied an interpreter. Petitioner was not denied his due process rights, and the claim must be denied.

### 4. Some Evidence of Guilt

As previously noted, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455. In this case, there was at least "some evidence" from which to conclude Petitioner committed the charged offense. Petitioner admitted he wrote the letter in question to the judge. Although he claimed at the hearing that someone else told him what to write and he did not understand what he was doing, there was more than enough evidence from which the hearing officer could conclude that Petitioner fully comprehended what he wrote. At the hearing, he stated he wrote the threatening letter because he had "lost everything and was having problems." (Resp't's Answer, Ex. 2, Garcia Decl., Attach. 1.) In his previous statements, Petitioner admitted he wrote the letter because he was "upset" with the judge and because things were "not going right." (Resp't's Answer, Ex. 2, Garcia Decl., at ¶ 12, 13.) Petitioner fails to demonstrate that there was not at least "some evidence" from which to conclude he committed the offenses.

In sum, all due process requirements were satisfied. The petition is without merit and should be denied.

## III.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///

///

///

///

## IV.
## ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The Petition for a Writ of Habeas Corpus is DENIED with prejudice;

2) The Court DECLINES to issue a certificate of appealability; and

3) The Clerk of Court is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

Dated: **February 21, 2014**

UNITED STATES MAGISTRATE JUDGE